# In the United States Court of Federal Claims

No. 10-393C

Filed: December 5, 2011

_____

| | |
|---|---|
| AVIATION SOFTWARE, INC. and AIRFRAME SYSTEMS, INC., <br><br> Plaintiffs, <br> v. <br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> L-3 COMMUNICATIONS CORPORATION, <br><br> Third-Party Defendant. | Copyright infringement case; Motion to dismiss under RCFC 12(b)(1) and 12(b)(6); 28 U.S.C. § 1498(b) – statute of limitations; Claim preclusion; Preclusion requirements satisfied; "Recently discovered" evidence did not prevent application of preclusion doctrine; Case dismissed. |

_____

**OPINION**
_____

*Heather A. James*, Whiteford, Taylor and Preston, LLP, Washington, D.C., for plaintiffs.

*Benjamin Speake Richards*, Civil Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Tony West*, for defendant.

*Thomas Lee Halkowski*, Fish & Richardson P.C., Wilmington, DE, for third-party defendant.

**ALLEGRA, Judge:**

In this copyright infringement case, Aviation Software, Inc. (Aviation) and Airframe Systems, Inc. (Airframe) seek damages from the United States for the latter's use of a software program used to maintain and service government-owned aircraft. This is, in fact, one of many

copyright suits that plaintiffs have filed in this regard – a fact that, as it turns out, plays a pivotal role in leading to this case being dismissed for the reasons that follow.

I.  **BACKGROUND**

A brief recitation of the facts provides necessary context.[1]

In 1979, Airframe, Aviation's predecessor in interest, began developing proprietary aircraft maintenance tracking software known as the Airline Resource Management System (ARMS). In July of 2003, Airframe registered and deposited with the United States Copyright Office copies of four versions of its ARMS source code: (i) an "IBM version," created and published in 1984 (Reg. No. TX 5-970-284); (ii) a "PC version," created and published in 1984 (Reg. No. TX 5-970-282); (iii) a "UNIX version" created and published in 1988 (Reg. No. TX 5-970-280); and (iv) a "2003 version," created and published in 2003 (Reg. No. TX 5-970-279). These copyrights cover various features of the ARMS.

On August 29, 1986, E-Systems, Inc. (E-Systems) purchased a single-user, stand-alone license to this software to maintain and service U.S. government-owned aircraft. This license did not include use of the source code. In 1997, an Airframe employee (now former), John Stolarz, allegedly copied a version of the ARMS source code onto one of E-Systems' computers, doing so, it is further alleged, without Airframe's authorization. Mr. Stolarz allegedly used the source code to modify the ARMS software so that it could run on newer computers that had been acquired by E-Systems. In 1995, E-Systems was acquired by Raytheon. In 2002, L-3 Communications Corporation (L-3) acquired Raytheon's E-Systems division, including the library containing Airframe's unauthorized code. In 2003, Airframe first learned that L-3 possessed its source code. On January 1, 2005, Airframe assigned the copyrights relating to the ARMS software to Aviation, subject to Airframe's ability to continue to license the software to L-3.

From January 2004 to January 2006, L-3 had a contract with defendant to develop proprietary aircraft maintenance software to replace the Airframe product being used by defendant at the time. In June of 2006, L-3 delivered its MMM (or M3) program to defendant and granted defendant a non-exclusive, world-wide, royalty-free license for that program. Plaintiffs aver that the M3 program contains unlicensed copies of the ARMS' reports, report formats, menu and column headings, and screen interfaces. It further alleges that defendant has continually used the M3 program since 2006.

Upon finding that L-3 had its source code, Airframe initiated a series of copyright infringement actions against L-3. Airframe filed the first of these suits in 2005, in the United States District Court for the Southern District of New York. Complaint, *Airframe Sys., Inc. v.*

---

[1]  These facts are largely drawn from plaintiffs' complaint, and, for purposes of this motion, are assumed to be correct. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

*L-3 Commc'ns Corp.*, No. 05-7638 (S.D.N.Y. Aug. 24, 2005) (*Airframe I*). On September 6, 2006, the New York district court dismissed this complaint for failure to state a claim, finding that it was "devoid of any allegations that [L-3] has reproduced the source code, distributed the source code, by sale or otherwise, or publicly disclosed the source code." *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 2006 WL 2588016, at *3 (S.D.N.Y. Sept. 6, 2006). Airframe did not appeal. Instead, on January 26, 2007, it brought a second copyright suit against L-3, Raytheon and Mr. Stolarz, this time in the United States District Court for the District of Massachusetts. Complaint, *Airframe Sys. Inc. v. Raytheon Co.*, No. 07-10142 (D. Mass. Jan. 26, 2007) (*Airframe II*). On October 31, 2007, the Massachusetts district court dismissed, in part, the complaint, relying on the doctrine of *res judicata*. *Airframe Sys., Inc. v. Raytheon Co.*, 520 Supp. 2d 258 (D. Mass. 2007). The court, however, denied L-3's motion to dismiss insofar as Airframe's complaint alleged that L-3 had engaged in copyright infringement after September 6, 2006. *Id.* at 266-67. On appeal the First Circuit affirmed. *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9 (1st Cir. 2010). Thereafter, Airframe voluntarily dismissed, with prejudice, its remaining infringement claims.

Meanwhile, on February 10, 2009, Airframe filed a third complaint, again in the United Stated District Court for the District of Massachusetts, naming L-3 and Raytheon as defendants. Complaint, *Airframe Sys. Inc. v. Raytheon Co.*, No. 08-11940 (D. Mass. Feb. 10, 2009) (*Airframe III*). Airframe alleged L-3 directly and contributorily infringed its copyright by, *inter alia*, developing and using the M3 program and allowing defendant to do the same. On July 23, 2009, the court dismissed all claims against Raytheon, as well as all claims against L-3 arising prior to September 6, 2009, the date of Airframe's voluntary dismissal in the first Massachusetts case. *Airframe Sys., Inc. v. Raytheon Co.*, Order No. 08-11940 (D. Mass. July 23, 2009).

On April 14, 2010, Aviation filed yet another complaint against L-3, again in the District of Massachusetts, alleging that L-3 directly and contributorily infringed the ARMS software through development and licensing of its M3 software. Complaint, *Aviation Software, Inc. v. L-3 Commc'ns Corp.*, No. 10-10619 (D. Mass. Apr. 14, 2010) (*Airframe IV*). This case was consolidated with the counts still pending in *Airframe III*. Thereafter, L-3 filed motions for summary judgment in the consolidated cases. At the oral argument on these motions, defendant argued that plaintiffs could not meet their burden for proving copyright infringement because they could not produce the original copyrighted source code. The district court agreed, granting summary judgment in favor of L-3 from the bench. On August 19, 2010, plaintiffs appealed the resulting judgment. On September 14, 2011, the First Circuit affirmed the district court's grant of summary judgment for L-3. *Airframe Systems, Inc. v. L-3 Commc'ns. Corp.*, 658 F.3d 100 (1st Cir. 2011).[2]

---

   [2] Judge Dyk, sitting by designation, wrote the First Circuit's opinion in this case. In explaining why plaintiffs' copyright claim was properly rejected by the district court, he wrote:

   Substantial similarity between the copyrighted work and the allegedly infringing work "is assessed by comparing the protected elements of the plaintiff's work as a whole against the defendant's work." *Situation Mgmt.* [*Sys., Inc. v. ASP, Consulting, LLC*, 560 F.3d 53, 59 (1st Cir. 2009)]. The fact finder

On June 24, 2010, plaintiffs filed a complaint in this court, which was amended on June 29, 2010, and again on October 11, 2010.  Complaint, *Aviation Software, Inc. and Airframe Sys., Inc. v. United States*, No. 10-393 (June 24, 2010), as amended (*Airframe V*).  On October 29, 2010, defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction.  Briefing and argument of that motion has now been completed.[3]

---

> gauges this element by applying the "ordinary observer" test, under which substantial similarity is found "if a reasonable, ordinary observer, upon examination of the two works, would 'conclude that the defendant unlawfully appropriated the plaintiff's protectable expression.'"  *T-Peg, Inc.* [*v. Vermont Timber Works, Inc.*, 459 F.3d 97, 112 (1st Cir. 2006)], (quoting *Johnson* [*v. Gordon*, 409 F.3d 12, 18 (1st Cir. 2005]).  However, before the foregoing comparison can take place, the plaintiff must necessarily establish the content of the copyrighted work that it contends was infringed.  Thus, to survive summary judgment in the present case, Airframe was required to present sufficient evidence of copying (including substantial similarity) with respect to at least one of the ARMS source code versions covered by its copyright registrations.
>
> Here, the only evidence of copying Airframe presented was Rosen's declaration.  Rosen made no direct comparison between the allegedly infringing M3 program and the ARMS source code versions covered by Airframe's copyright registrations, as would normally be done.  Rather, he compared the M3 program to the updated 2009 version of the ARMS source code.  While this would support a finding of substantial similarity between the M3 program and Airframe's "current" source code (i.e., the 2009 ARMS source code), there is no claim that the 2009 source code was itself registered or that the 2009 version is the same as one of Airframe's earlier registered versions – the 1981 "IBM version," 1984 "PC version," or 1988 "UNIX version."  Rosen's declaration said nothing about similarities between the 2009 ARMS version and Airframe's earlier registered ARMS versions.  Indeed, Airframe admits that they are in fact not the same, because the 2009 source code is a version "that had been updated by Airframe in the ordinary course of business."  Appellant's Br. 15.  Having presented no evidence sufficient to prove the content of its registered source code versions, Airframe cannot show that any of its registered works is substantially similar to the allegedly infringing M3 program, and Airframe has failed to create a genuine issue of material fact as to its claim of copyright infringement.

*Airframe Systems*, 658 F.3d at 106-07.

[3] On August 22, 2011, the Massachusetts district court denied a motion filed by Airframe in *Airframe III* and *Airframe IV* seeking relief under Rule 60(b).  Airframe appealed this decision, but voluntarily dismissed that appeal on October 21, 2011.

## II.   DISCUSSION

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997); *see also Bell Atl. Corp.*, 550 U.S. at 555.  The plaintiff must establish that the court has subject matter jurisdiction over its claims. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Normandy Apartments, Ltd. v. United States*, 2011 WL 3438449, at *3-4 (Fed. Cl., Aug. 2, 2011).  The court may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists. *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991).  RCFC 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment."  But, this provision "does not apply to a motion made under Rule 12(b)(1) to dismiss for lack of jurisdiction over the subject matter," under which the court undoubtedly may "address matters outside the pleadings." *Reed Island-MLC, Inc. v. United States*, 67 Fed. Cl. 27, 32 (2005) (citing *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed. Cir. 2002)); *see also Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 58 (2009).

To survive a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the complaint must have sufficient "facial plausibility" to "allow [ ] the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Klamath Tribe Claims Comm. v. United States*, 97 Fed. Cl. 203, 208 (2011).  The plaintiff's factual allegations must "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." *Bell Atl. Corp.*, 550 U.S. at 555; *see also Dobyns v. United States*, 91 Fed. Cl. 412, 422-28 (2010) (examining this pleading standard).  Nevertheless, the Federal Circuit has recently reiterated that "[i]n ruling on a 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009); *see also Bank of Guam v. United States*, 578 F.3d 1318, 1326 (Fed. Cir. 2009), *cert. denied*, 130 S. Ct. 3468 (2010); *Petro-Hunt*, 90 Fed. Cl. at 68.

Defendant's primary argument is that plaintiffs' action fails to state a claim under RCFC 12(b)(6) because it is barred by the doctrines of issue and claim preclusion.  Defendant also asserts, under RCFC 12(b)(1), that to the extent plaintiffs seek recovery for acts of infringement occurring before June 29, 2007, their action is barred by the statute of limitations in 28 U.S.C. §1498(b).  The court will consider these allegations in reverse order.

Section 1498(b) of Title 28 provides that "no recovery shall be had for any infringement of a copyright . . . committed more than three years prior to the filing of the complaint or counterclaim for infringement in the action."  28 U.S.C. § 1498(b).  The Federal Circuit has made clear that the limitation found in this provision is jurisdictional in nature. *See Blueport Co., LLC v. United States*, 533 F.3d 1374, 1380 (Fed. Cir. 2008) (discussing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008)).  Plaintiffs filed their complaint in this court on June 29, 2010.  Therefore, they are barred by § 1498(b) from recovering for any alleged

infringement of their copyrights that occurred before June 29, 2007.  Plaintiffs make no argument to the contrary on this point and, accordingly, the court concludes that it lacks jurisdiction over this portion of plaintiffs' complaint.

Turning next to defendant's preclusion arguments, the court observes that the background principles that control these questions are not in dispute.  To begin with, "[a] fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and *res judicata*, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the parties or their privies.'" *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *Southern Pac. R. Co. v. United States*, 168 U.S. 1, 48-49 (1897) (ellipses in original)).  As a consequence, "the usual rule is that merits of a legal claim once decided in a court of competent jurisdiction are not subject to redetermination," *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982), and such a judicial decision "precludes the parties or their privies from relitigating issues that were or could have been raised in that action," *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981).  *See also, e.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332-33 (1979); *Gilig v. Nike, Inc.*, 602 F.3d 1354, 1361 (Fed. Cir. 2010).

This preclusion of collateral litigation "is not a mere matter of practice or procedure inherited from a more technical time than ours," the Supreme Court has stated, but "is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts."  *Moitie*, 452 U.S. at 401 (citation and internal quotation marks omitted).  Indeed, rules of issue and claim preclusion are "central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Montana*, 440 U.S. at 153.  The important social values those rules advance have often been rehearsed: thus, barring collateral litigation protects parties against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Id*. at 153-154; *see also Kremer*, 456 U.S. at 467 n.6; *Allen v. McCurry*, 449 U.S. 90, 94 (1981); *Parklane Hosiery*, 439 U.S. at 326.  This "public policy" that "there be an end of litigation," *Durfee v. Duke*, 375 U.S. 106, 111 (1963) (citations omitted), applies with particular force in the context of cases involving intellectual property where it serves to "prevent duplicative litigation against a single infringer for a single act of infringement." *Black Clawson Co., Inc. v. Kroenert Corp.*, 245 F.3d 759, 765 (8th Cir. 2001).

Consistent with these principles, claim preclusion applies when there is (i) "a judgment on the merits in a prior suit;" (ii) "a second suit involving the same parties or their privies;" and (iii) the second suit is "based on the same cause of action."  *Parklane Hosiery*, 439 U.S. at 326 n. 5; *see also Gilig*, 602 F.3d at 1361; *Jett, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000); *Strategic Hous. Finance Corp. of Travis Cty. v. United States*, 87 Fed. Cl. 183, 192 (2009).  In addition, for this doctrine to apply, a litigant must have a "full and fair opportunity" to litigate its case.  *Poyner v. Murray*, 508 U.S. 931, 933 (1993); *see also Kremer*, 456 U.S. at 481 n.22; *Pactiv Corp. v. Dow Chemical Co.*, 449 F.3d 1227, 1233 (Fed. Cir. 2006).

Plainly, the first and third prongs of the test outlined above are satisfied here.  As to the first of these prongs, there have been at least two merits decisions regarding plaintiffs' copyright claims – that of the New York district court in *Airframe I* and that of the Massachusetts district court in *Airframe III* and *Airframe IV* (which merits decision was most recently affirmed by the First Circuit).  Indeed, the latter two suits were premised on the notion that L-3 contributorily infringed its copyrights by developing the M3 software and licensing it to the United States.[4]  Moreover, it would appear that several of the earlier suits and the instant case involve the same transactional facts and thus must be viewed as involving the same "cause of action" for preclusion purposes.  *See United Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1344 (Fed. Cir. 1999); *Vitaline Corp. v. General Mills, Inc.*, 891 F.2d 273, 275 (Fed. Cir. 1989).[5]

Insofar as these copyright infringement claims are concerned, it would also appear that the United States is in privity with L-3.  As the Supreme Court has observed, the term "privity" is now used broadly "to describe various relationships between litigants that would not have come within the traditional definition of that term."  *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798 (1996) (citing Restatement (Second) of Judgments (1982)); *see also Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323-24 (Fed. Cir. 2008).  In the case *sub judice*, plaintiffs predicate the liability of the United States on L-3's conduct.  Regarding such claims of vicarious liability, the Restatement (Second) on Judgments provides (with exceptions inapplicable herein) that:

> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other.
>
> (1)  A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct . . . .

---

[4]  "[O]ne contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement."  *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007); *see also Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("[o]ne infringes contributorily by intentionally inducing or encouraging direct inducement").

[5]  In the court's view, that the United States could not have been sued in the district court actions, owing to sovereign immunity considerations, does not alter this conclusion.  If the law were otherwise, claim preclusion could rarely be invoked  by the United States in the wide range of cases over which this court has exclusive jurisdiction.

Restatement (Second) Judgments at § 51; *see also Criterion 508 Solutions, Inc. v. Lockheed Martin Servs. Inc.*, 2009 WL 8387883, at *10 (S.D. Iowa 2009).[6] Accordingly, the court finds that the United States, by virtue of its contractual relationship with L-3, was in privity with that corporation for purposes of the claim preclusion doctrine.[7]

Nor is there any reason to believe that plaintiffs did not have a full and fair opportunity to litigate their earlier cases. There has been neither a compelling showing of unfairness or inadequacy in how the prior litigation was conducted, nor, in particular, any indication that application of the doctrine of claim preclusion here would result in a denial of due process. *See Kremer*, 456 U.S. at 481 n.22; *Pactiv Corp.*, 449 F.3d at 1233. Rather, plaintiffs' banner claim is that they should not be bound by the claim preclusion doctrine because they have now found the critical evidence that Airframe failed to present in the earlier suits – the original source code. That plaintiffs did not find this evidence earlier hardly makes it "newly discovered," at least as that concept is employed in rules like RCFC 60, which require a showing that the evidence could not, with reasonable diligence, have been discovered in time to move for a new trial under RCFC 59(b). And, indeed, the district court in *Airframe IV* recently denied plaintiffs' motion for reconsideration under Federal Rule of Civil Procedure 60 on that basis. At all events, it is well-accepted that "the fact that . . . new evidence might change the outcome of the case does not affect the application of the claim preclusion doctrine." *Saylor v. United States*, 315 F.3d 664, 668 (6th Cir. 2003); *see also Ripplin Shoals Land Co., LLC v. U.S. Army Corps of Engineers*, 440 F.3d 1038, 1042 (8th Cir. 2006). Indeed, "[i]f submitting new evidence rendered a prior decision factually distinct, *res judicata* would cease to exist, and [litigation] would continue *ad infinitum*. *Torres v. Shalala*, 48 F.3d 887, 894 (5th Cir. 1995).

### III. CONCLUSION

The court will not gild the lily. In sum, it finds that plaintiffs' pre-2007 claims are barred by the statute of limitations in 28 U.S.C. § 1498(b). The remainder of plaintiffs' infringement

---

[6] The comments to the Restatement note that, "[i]n an important sense, . . . there is only a single claim. The same loss is involved, usually the same measure of damages, and the same or nearly identical issues of fact and law." Restatement (Second) Judgments, at § 51 cmt. b. As such, "if [the injured party] is allowed to sue the second obligor after having lost an action against the first," rules of preclusion should "approximate those that govern when the same claim is successively asserted against a single defendant." *Id.*; *see also Gonzales v. Hernandez*, 175 F.3d 1202, 1205 (10th Cir. 1999).

[7] Even before the Restatement, the Supreme Court had held that parties could invoke claim preclusion if "their liability was . . . 'altogether dependent upon the culpability' of the [prior] defendants.'" *Lawlor v. Nat'l Screen Service Corp.*, 349 U.S. 322, 330 (1955) (quoting *Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 U.S. 111, 127 (1912)); *see also Fiumara v. Fireman's Fund Ins. Cos.*, 746 F.2d 87, 92 (1st Cir. 1984) (finding that a suit against agents is barred by claim preclusion where the principal has been adjudged not liable).

claims are barred by the doctrine of claim preclusion.  Accordingly, the court **GRANTS** defendant's motion to dismiss under RCFC 12(b)(1) and 12(b)(6).  The Clerk is hereby ordered to dismiss plaintiffs' complaint.

    **IT IS SO ORDERED.**

                                                s/ Francis M. Allegra
                                                Francis M. Allegra
                                                Judge